**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EARL BRADLEY, | ) | CASE NO. 3:23-CV-00980 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SANDRA CHARLES, APRN, BYRON | ) | December 10, 2024 |
| KENNEDY, M.D., and VINCENT | ) | |
| SANTAVENERE, RN, | | |
| *Defendants*. | | |

## MEMORANDUM OF DECISION
## RE: MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 39, 55]

Kari A. Dooley, United States District Judge:

Plaintiff Earl Bradley ("Plaintiff" or "Bradley"), a sentenced inmate in the custody of the

Connecticut Department of Correction ("DOC"), brings this civil rights action pursuant to 42

U.S.C. § 1983 alleging deliberate indifference to his medical needs in violation of the Eighth

Amendment against Defendants Registered Nurse ("RN") Vincent Santavenere and Advanced

Practice Registered Nurse ("APRN") Sandra Charles.   Plaintiff seeks money damages against the

defendants who are sued in their individual capacities.   Compl., ECF No. 1; Initial Review Order,

ECF No. 10.

APRN Charles and RN Santavenere now each move separately for summary judgment.

Charles's Mot. for Summ. J., ECF No. 39; Santavenere's Mot. for Summ. J., ECF No. 55.

Plaintiff opposes both motions.  Obj. to Charles's Mot. for Summ. J., ECF No. 46; Obj. to

Santavenere's Mot. for Summ. J., ECF No. 85.   For the reasons that follow, the Court GRANTS

both Defendants' motions for summary judgment.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute

as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R.

Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14

(2d Cir. 2017).   "A genuine issue of material fact exists if 'the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'"   *Nick's Garage*, 875 F.3d at 113–14

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   Which facts are material

is determined by the substantive law.   *Anderson*, 477 U.S. at 248.   "The same standard applies

whether summary judgment is granted on the merits or on an affirmative defense . . . ."

*Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).   In considering a motion for

summary judgment, a court "must construe the facts in the light most favorable to the non-

moving party and must resolve all ambiguities and draw all reasonable inferences against the

movant."   *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (quotation omitted).

The moving party bears the initial burden of informing the court of the basis for its motion

and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of

material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Once the moving party meets

this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of

a genuine dispute of material fact."   *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

He cannot "rely on conclusory allegations or unsubstantiated speculation."   *Robinson v.*

*Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation omitted).   To defeat a motion

for summary judgment, the nonmoving party must present such evidence as would allow a jury to

find in his favor.   *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and

interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d

51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not

overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**FACTS[1]**

The following factual narrative derives from the Court's review of the complaint,[2] the parties' Local Rule 56(a) statements of facts, and all supporting materials. *See* Compl., ECF No. 1; Charles L.R. Stmt., ECF No. 39-1;[3] Santavenere L.R. Stmt., ECF No. 55-2; Pl.'s L.R. Stmt. to Charles's Mot., ECF No. 46 at 13–45; Pl.'s L.R. Stmt. to Santavenere's Mot., ECF No. 85 at 18–34.[4]

At the time relevant to this action, Plaintiff was a sentenced inmate in the custody of the Connecticut Department of Correction and was housed at Cheshire Correctional Institution ("Cheshire"). Santavenere L.R. Stmt. ¶ 1. Both APRN Charles and RN Santavenere worked at Cheshire. *Id.* ¶ 35; Charles L.R. Stmt. ¶ 1.

---

[1] Although many of the same facts are included in both Defendants' Local Civil Rule 56(a) Statement (and both parties have filed many of the same exhibits), the Court cites only one source for the statements and exhibits. The cited page numbers are the page numbers assigned by the CM/ECF system as reflected in the ECF header and not the page numbers marked on the documents themselves, if any.

[2] *See Jordan v. LaFrance*, No. 3:18-CV-1541, 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint . . . may be considered as an affidavit" for summary judgment purposes); *Walcott v. Connaughton*, No. 3:17-CV-1150, 2018 WL 6624195, at *1, n. 1 (D. Conn. Dec. 18, 2018).

[3] The Court notes that Charles does not support her administrative remedy exhibits with any declarations to verify their authenticity. The Court includes herein facts that are not disputed by Plaintiff or are reflected in Santavenere's verified administrative remedy exhibits. The Court does not rely on the medical exhibits to resolve Charles's motion for summary judgment.

[4] Both Defendants provided Plaintiff a notice, in compliance with Local Civil Rule 56(b), that informed him of the requirements for filing his papers in opposition to the motions for summary judgment under Local Civil Rule 56. Notice to *Pro Se* Litigant, ECF Nos. 39-6, 55-3. Local Civil Rule 56(a)(1) provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Civil Rule 56(a)(3) provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." Accordingly, where Plaintiff has failed to comply with the requirements of Local Civil Rule 56(a), the Court considers Defendants' statements of fact to be true if supported by the evidence.

<u>APRN Charles</u>

On May 10, 2021, APRN Charles saw Plaintiff at Cheshire after he reported that he was concerned that he was having a stroke and had experienced weakness, numbness, and imbalance. Charles L.R. Stmt. ¶ 2.   APRN Charles conducted a physical examination of Plaintiff and noted that he had no facial drooping, no speech issues, and good strength in all four extremities.   *Id.* ¶ 3; *see* Charles Mot. Ex. B ("Medical Records"), ECF No. 39-3, at 1–2.   APRN Charles documented her findings from her neurological examination as follows: Plaintiff's reflexes were normal; he was able to follow directions and move all of his limbs; his strength measured in accessible ranges; and his limbs all measured at the same strength level, indicating he did not have more weakness on one side of his body.   Charles L.R. Stmt. ¶¶ 4–5.   She noted that Plaintiff reported hemi-paresthesia during sensation testing, with sensation that was normal on his right side but abnormal on his left.   *Id.* ¶ 6.

APRN Charles next performed a panel to rule out stroke called a "Modified NIH Stroke Scale test" ("mNIHSS").   *Id.* ¶ 7.   During this test, Charles recorded qualitative data for neurological indicators of stroke.   *Id.* ¶ 8; Medical Records, ECF No. 39-3, at 1.   She noted that Plaintiff scored a "0" (meaning no findings) in every category,[5] except for a moderate score of "1" in the category of "sensation."   Charles L.R. Stmt. ¶ 8.[6]   The medical record also shows a notation for an EKG testing result of no abnormal rhythm ("NSR").   Medical Records, ECF No. 39-3, at 1.   In the medical note for May 10, 2021, APRN Charles stated the following "Plan Comments":

---

[5] These categories were as follows: Level of consciousness/orientation; level of consciousness commands; horizontal extra-ocular movements; visual fields; left arm motor drift; right arm motor drift; left leg motor drift; right leg motor drift; test sensation; test language/aphasia; and test extension/inattention/neglect.   Medical Records, ECF No. 39-3, at 1.

[6] Plaintiff claims that he did not have EKG testing at the time of his appointment with Charles and the "charting was not done in real time."   Pl.'s L.R. Stmt. to Charles's Mot., ECF No. 46, at 17 (¶ 10).

> Patient was concerned he is having a stroke, this is unlikely, mNIHSS 1/30, he does have minor sensory loss on left side; he does have a history of neuropathy 2nd to diabetes; I wonder if this is progression of his neuropathy;
> - He had good strength all four extremities right/left; no facial droop, no aphasia; he told me he's not able to stand/walk straight because he feels out of balance due to vertigo; unable to perform tandem walk or stand on one foot.

*Id.* at 1; *see also* Charles Mot. Ex. D ("Requests for Admission"), ECF No. 39-5, at 4 (Plaintiff's admission that "vertigo was a complaint on that day, [although he] had no such prior history"). She noted that Plaintiff had a small drop in his blood pressure when moving from a seated to standing position and instructed Plaintiff to change positions more slowly and to increase his fluid intake.   Charles L.R. Stmt., ECF No. 39-1, ¶ 14; Medical Records, ECF No. 39-3, at 1.

APRN Charles avers that Plaintiff's mNIHSS score of 1/30 is considered a very low result and indicated that it "was very unlikely that he was having a stroke."   Charles Mot. Ex. C ("Charles Decl."), ECF No. 39-4, ¶ 13.   She also discussed with Plaintiff his preexisting condition of neuropathy and his report of vertigo, and that the neuropathy and vertigo reasonably provided an explanation for the symptoms Plaintiff had reported at his appointment with her on May 10, 2021, especially in light of his low stroke scale score.   *Id.* ¶¶ 14–15.

In her medical notes for the appointment on May 10, 2021, Charles noted her suggestion that Plaintiff "be moved temporarily to bottom tier because of increased risk for falls using stairs." Medical Records, ECF No. 39-3, at 2.   She wrote in all capital letters:

> BUT PATIENT REFUSED CATEGORICALLY and said he would sue this provider if tries to move to bottom tier.   Patient states he feels safer on top tier, he will not try to go down the stairs and will have other inmates bring up his trays. Will order a walker temporarily for safety.

*Id.*[7]   In addition, Charles indicated that she would "order a set of labs including A1C, magnesium and Vit B12" and "will notify him of results."   *Id.*

---

[7] Plaintiff represents that he was "never so clueless as to threaten anyone for a suggestion" and that he was "powerless to refuse a move to bottom tier."   Pl.'s L.R. Stmt. to Charles's Mot., ECF No. 46, at 20 (¶ 15).

Plaintiff admits that Charles and other correctional health staff referred him to the University of Connecticut ("UConn") Hospital after observing changes in his condition. Pl.'s L.R. Stmt. to Charles's Mot., ECF No. 46, at 39. Charles avers that she assisted coordinating Plaintiff's transportation to UConn Hospital on May 13, 2021, but she had no involvement with his treatment at UConn Hospital. Charles Decl., ECF No. 39-4, ¶¶ 22–23.[8]

Nursing Supervisor Santavenere

As a Nursing Supervisor, RN Santavenere was responsible for creating the nurse schedule, ordering supplies, auditing the pharmacy, touring the facilities, supervising the nursing staff, and administering the payroll. Santavenere L.R. Stmt., ECF No. 55-2, ¶ 36. Santavenere did not generally provide direct patient care, except on certain occasions as necessary, such as covering for overtime shifts or in an emergency situation. *Id.* ¶¶ 35, 37. In such instances, Santavenere carried out the orders of the doctors and APRNs but had no authority to overrule or supersede the medical decisions, orders, and determinations of the doctors, APRNs, and medical administrators. *Id.* ¶¶ 38–39.

Santavenere did not provide Plaintiff with medical treatment following Plaintiff's alleged stroke on May 7, 2021. *Id.* ¶ 40.

On May 11, 2021, Santavenere met with Plaintiff to discuss the need for him to be moved to the lower tier because he was a fall risk. *Id.* ¶ 42; *see* Santavenere Mot. Ex. G ("Sealed Medical Records"), ECF No. 57, at 4. In a medical note dated May 11, 2021, Santavenere wrote:

> Met with inmate on the unit to address the need for him to be moved to the lower tier. Unit manager present, inmate not objecting to the move following last assessment by prescriber. He is currently a risk for falls, education provided. He verbalized an understanding. No further questions or concerns expressed by inmate.

---

[8] Defendant Charles represents that Plaintiff did not return a signed records authorization to permit her to have access to his non-DOC treatment records. Charles L.R. Stmt., ECF No. 39-1, ¶ 25.

Sealed Medical Records, ECF No. 57, at 4.    Thereafter, Santavenere was made aware of the efforts to find Plaintiff appropriate housing to accommodate his "necessary interventions" due to his level of mobility.    Santavenere L.R. Stmt., ECF No. 55-2, ¶ 43; *see* Sealed Medical Records, ECF No. 57, at 3.    Santavenere was not involved in the ultimate decision-making regarding Plaintiff's move to another facility.    Santavenere L.R. Stmt., ECF No. 55-2, ¶ 43.

Santavenere was, however, also involved in facilitating Plaintiff's use of a sedan-style vehicle (rather than a van) for transportation to and from his medical appointments, due to his limited mobility, and to assist his entrance into and exit from the vehicle during transport.    *Id.* ¶ 44.    In a medical noted dated May 27, 2021, Defendant Santavenere wrote:

> Upon review of inmate's status change, a sedan will be utilized rather than a van due to the height and the inmate's ability to safely get in and out the transport vehicle.    Inmate Bradley stated, "This will be very helpful, I don't need a wheelchair van or anything elaborate, I just can't get up in a tall vehicle while shackled in my condition."    This information has been shared with custody to ensure he is accommodated for non medical trips as well.    No further concerns expressed at this time.

Sealed Medical Records, ECF No. 57, at 2.

Santavenere had no other relevant interaction with Plaintiff or his care.    Santavenere L.R. Stmt., ECF No. 55-2, ¶ 45.    Santavenere avers that he understood Plaintiff's care was being attended to by his medical care providers, and that he never received any inmate request forms directed to his attention from Plaintiff.    Santavenere Mot. Ex. F ("Santavenere Decl."), ECF No. 55-9, ¶¶ 18–19.

<u>Administrative Directive 8.9</u>

At the time relevant to this action, exhaustion of claims regarding inmate medical needs was governed by Connecticut DOC Administrative Directive ("A.D.") 8.9, titled "Health Services

Administrative Remedies" (effective April 30, 2021).[9]  *See* Santavenere L.R. Stmt., ECF No. 55-2, ¶ 7; *Cruz v. Naqvi*, No. 3:22-CV-1241, 2024 WL 4335653, at *3 (D. Conn. Sept. 27, 2024).

There are two types of health services administrative remedies ("HSARs").  A diagnosis and treatment remedy seeks "review of diagnosis or treatment decision made by a physician, psychiatrist, psychologist, advanced practice registered nurse (APRN), physician assistant (PA), physician assistant-certified (PA-C), or dentist."  A.D. 8.9(6)(a)(i).  An administrative issue remedy seeks "review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider."  *Id.* 8.9(6)(a)(ii).

Upon receipt, the administrative remedy is reviewed for compliance with the provisions in Directive 8.9.  If the request is not in compliance, it is rejected.  *See id.* 8.9(6)(b)(i).

Prior to filing any HSAR, the inmate "must attempt to seek informal resolution."  *Id.* 8.9(6)(b)(ii)(1).  That informal resolution may include attempts to resolve the issue verbally with the appropriate staff member.  *Id.* 8.9(6)(b)(ii)(2).  If the informal resolution is unsuccessful, the inmate "shall submit a written request via CN 9601, Inmate Request Form."  *Id.* 8.9(6)(b)(ii)(3). If an inmate pursues the written form, a DOC official must respond within 15 business days from receipt of the written inmate request.  *Id.* 8.9(6)(b)(ii)(7).

If the inmate is not satisfied with the informal resolution outlined above, only then may the inmate file a request for an HSAR.  *Id.* 8.9(6)(b)(iii)(1).  The inmate "shall" attach the CN 9601, Inmate Request Form, with the staff member's response, or the inmate must include an explanation indicating why the CN 9601 is not attached.  *Id.* 8.9(6)(b)(iii)(2).  The inmate must submit a

---

[9] Defendant Santavenere has attached the relevant version of A.D. 8.9 at his Exhibit B.  Santavenere Mot. Ex. B, ECF No. 55-5.  A.D. 8.9 is also publicly available on the DOC website under "Directives and Policies," Chapter 8.  *See Administrative Directive Chapter 8*, Conn. Dep't of Corrs., https://portal.ct.gov/DOC/AD/AD-Chapter-8; *Sanchez v. RN Debbie*, No. 3:18-CV-1505, 2018 WL 5314916, at *2 (D. Conn. Oct. 26, 2018) (The Court may "take judicial notice of relevant matters of public record" (quoting *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012))).

completed CN 8901, HSAR Form Level 1, in the designated HSAR box. *Id.* 8.9(6)(b)(iii)(3). The inmate's HSAR Form Level 1 must be filed "within 30 calendar days of the occurrence or discovery of the cause of or reason for the request for the [HSAR]." *Id.* 8.9(6)(b)(iii)(4).

For review of an inmate's diagnosis or treatment, the inmate must file a request for an HSAR and "shall check the 'Diagnosis/Treatment' box on the CN 8901, [HSAR] Form- Level 1." *Id.* 8.9(6)(c)(i)(1). The inmate "shall concisely explain the specific diagnosis or treatment decision and specify the date of diagnosis or treatment," and also, "shall explain how he or she is dissatisfied with the diagnosis and treatment, how he or she has been affected, and concisely state the resolution desired." *Id.* Upon receipt of an inmate's CN 8901 Level 1 form, the HSAR Coordinator "shall consult with the provider who made the decision to determine what action, if any, should be taken." *Id.* 8.9(6)(c)(i)(2)(a). "If the provider decides that the existing diagnosis or treatment is appropriate, the remedy shall be denied and not subject to further appeal." *Id.* "If the provider determines further evaluation is necessary, the provider may schedule a Health Services Review appointment"; "[i]f no change in diagnosis or treatment results from this review, the inmate may not request a second review for the same issue unless his or her clinical situation has changed significantly since the first review." *Id.* 8.9(6)(c)(i)(2)(b).

The decision on an inmate's CN 8901 Level 1 form must be issued in writing within thirty days of receipt of the CN 8901 form, and the decision is made by the HSAR Coordinator in consultation with appropriate health-care supervisors. *See id.* 8.9(6)(c)(ii)(1) & (3). If the inmate's HSAR is not in compliance with the terms of Directive 8.9, it shall be rejected, and the inmate may correct any procedural deficiencies within five calendar days. *Id.* 8.9(6)(c)(ii)(2)(a). If the inmate does not correct the defects, the request for the HSAR will be rejected without an opportunity for appeal. *Id.* If the inmate is not satisfied with the response or has not received a

response within thirty business days, the inmate may file a Level 2 appeal on form CN 8902.   *See id.* 8.9(6)(c)(ii)(4)(a) & (iii)(1).

The Regional Chief Operating Officer ("RCOO") must respond to the Level 2 HSAR within thirty business days.   *See id.* 8.9(6)(c)(iii)(2–3).   This is the final level of review unless the inmate does not receive a timely response from the RCOO.   *See id.* 8.9(6)(c)(iii)(5) & (4)(a). If the inmate failed to receive a response to his CN 8902, or his issue challenges department-level policy or the integrity of the HSAR procedures, the inmate may file a Level 3 appeal on form CN 8903.   *See id.* 8.9(6)(c)(iv)(1).

<u>Plaintiff's Administrative Remedies</u>

Plaintiff asserts that he exhausted his administrative remedies.   Compl., ECF No. 1, at 16.

Debra Cruz, the Cheshire HSAR Coordinator, avers that she conducted a review of the HSAR Log to determine whether Plaintiff filed HSARs between May 1, 2021 and May 2, 2022. Santavenere Mot. Ex. A ("Cruz Decl."), ECF No. 55-4, ¶ 27.   Plaintiff filed five HSARs between May 7, 2021 and May 1, 2022.   *Id.* ¶ 28.

<u>HSAR #30999</u>

Plaintiff filed HSAR #30999 dated May 18, 2021 with the "Administrative" box checked. *Id.* ¶ 29; Santavenere Mot. Ex. E ("Bradley HSARs"), ECF No. 55-8, at 2.   In it, he complained about receiving incomplete medical records due to "outdated software," and he requested his medical records from October 24, 2019 to November 22, 2019.   Bradley HSARs, ECF No. 55-8, at 2.   This HSAR was denied on May 25, 2021, for the stated reason that "Mr. Bradley was provided said missing copies" by Colleen Gallagher.   *Id.* at 3.

Plaintiff filed a Level 2 appeal, stating that he had received records from Gallagher, but "[i]t's impossible to know what I don't know, and I'm sure Colleen Gallagher would not venture

a guess that my received copy is now complete and true." *Id.* at 4.   On June 3, 2021, RCOO

Kirsten Shea upheld his Level 2 appeal for an HSAR in part, indicating that the medical records

were reprinted and that Plaintiff was "in fact receiving" his requested records.   *Id.*

HSARs #31178 and #38

Plaintiff later filed an HSAR #31178 dated June 10, 2021, with the "Administrative" box

checked.   Santavenere L.R. Stmt., ECF No. 55-2, ¶ 29.   In it, Plaintiff explained he sent an inmate

request May 11, 2021, but received no response, and therefore no inmate request was attached.

Bradley HSARs, ECF No. 55-8, at 5.   He stated that "[t]his form is submitted to memorialize in a

timely fashion what *might* have been improper care surrounding my stroke on 5/7, diagnosed

5/13/21[,]" and that he had "requested medical records from UConn and DOC," but "[f]or now my

request is mainly discovery."   *Id.*   On June 14, 2021, HSAR Coordinator Debra Cruz rejected

HSAR #31178 for the stated reason: "Not clear + concise on what is being grieved."   *Id.* at 6.

Plaintiff later filed HSAR #38 dated June 18, 2021 with his "Grievance Rewrite."

Santavenere L.R. Stmt., ECF No. 55-2, ¶ 31; Bradley HSARs, ECF No. 55-8, at 9.   Plaintiff again

checked the "Administrative" box and indicated he had not attached his inmate request submitted

on May 11, 2021 because he had not received a response.   Bradley HSARs, ECF No. 55-8, at 9.

He explained that he had a stroke on May 7, 2021 that was not diagnosed until May 13, 2021, and

that he had requested but not received medical records from DOC and UConn.   *Id.*   He specified

his "Requested action" as "medical narr[a]tive concerning the sequence of events following the

5/7/21 stroke to augment discovery."   *Id.*

HSAR Coordinator Cruz upheld HSAR #38 in part on June 23, 2021, stating: "After

reviewing your chart it is probable that once you receive your medical records and review them

you will find the answers you are looking for."   *Id.* at 10.

<u>HSAR #38 Appeal</u>

Defendant Charles has submitted a copy of a Level 2 HSAR form, purporting to appeal the disposition of Bradley's Level 1 HSAR #38.  Charles Mot. Ex. A, ECF No. 39-2, at 12.[10]  This copy of the Level 2 HSAR form is dated March 17, 2023, with a receipt date of March 17, 2023, almost two years after HSAR Coordinator Cruz entered her Level 1 response to HSAR #38 on June 23, 2021.  *Id.*  In the Level 2 appeal, Plaintiff complained that "full discovery was not provided" and requested "assistance with discovery and exhaustion of [administrative remedies]." *Id.*  The RCOO rejected the Level 2 appeal as untimely.  *Id.*

Plaintiff does not dispute that this request was administrative in nature.  Pl.'s L.R. Stmt. to Charles's Mot., ECF No. 46, at 27 (¶ 31).

<u>HSAR #31215</u>

Plaintiff filed HSAR #31215 dated June 12, 2021, with the box checked for an "Administrative" issue.  Santavenere L.R. Stmt., ECF No. 55-2, ¶ 30; Bradley HSARs, ECF No. 55-8, at 7.  In it, he complained about the failure to provide him a car or sedan for his transport rather than a van.  Bradley HSARs, ECF No. 55-8, at 7.

HSAR Coordinator Cruz rejected this HSAR on June 23, 2021, for the stated reason that the "issues in this remedy are directed at actions of DOC—uconn staff" and health services staff was not "part of [the] decision" regarding Plaintiff's transportation request for that day.  *Id.* at 8.

<u>HSAR #536</u>

Plaintiff filed HSAR #536 dated September 8, 2021, with the "Administrative" box checked.  Santavenere L.R. Stmt., ECF No. 55-2, ¶ 33; Bradley HSARs, ECF No. 55-8, at 11. He explained that he felt fatigue and weakness after his stroke in May 2021 and "request[ed] . . .

---

[10] Charles provides no verification of this exhibit's authenticity.  *See supra* at n.3.

reasonable time arrival at [Admitting and Processing]."   Bradley HSARs, ECF No. 55-8, at 11.

HSAR Coordinator Cruz denied this HSAR on September 22, 2021 for the stated reason that his

"complaint appears to refer to an event taking place in May, 2021," which was "outside the window

of 30 days from the event."   *Id.* at 12.

Plaintiff later filed a Level 2 appeal of the HSAR #536 dated September 24, 2021,

explaining that he had referred to his stroke in May 2021 as "background information."

Santavenere L.R. Stmt., ECF No. 55-2, ¶ 33; Bradley HSARs, ECF No. 55-8, at 13.   On

September 29, 2021, Cruz rejected this HSAR for the following stated reasons: "Medical has no

control of the arrival of transportation.   There is no policy stating transportation must arrive by a

certain time."   Bradley HSARs, ECF No. 55-8, at 13.

<u>Plaintiff's Inmate Request Form Dated May 11, 2021</u>

Both Plaintiff and Defendant Charles have submitted copies of an inmate request form

dated May 11, 2021 from Plaintiff directed to "Nursing Supervisor Vince."   Compl., ECF No. 1,

at 19; Charles Mot. Ex. A, ECF No. 39-2, at 5–6; Medical Records, ECF No. 39-3, at 3–4. The

genesis and timing of this inmate request form is disputed.   In his request, Plaintiff described

having "had a rather acute episode of left hemi paresthia" that was "atypical, but mostly likely in

the central nervous system on the right side."   Compl., ECF No. 1, at 19.   Plaintiff noted that "[i]t

would not be surprising if it tied into my experience with COVID" and requested to see a

neurologist or, if not possible, he would "welcome a 2nd opinion from Dr. Ruiz."   *Id.* at 19–20.

He indicated that there could be "a strong recommendation" for him to "be placed on steroids for

a presumed brain inflammation," or "a strong possibility that a CT scan of the brain would be

recommended," and that "a 'rule out stroke' does nothing with regard to a positive diagnosis."   *Id.*

at 20.   On its face, this inmate request form appears to take issue with Defendant Charles's treatment the previous day and seeks Defendant Santavenere's intervention.

The record contains more than one version of Plaintiff's inmate request form dated May 11, 2021.   On the copy of the form included in Defendant Charles's Exhibit A, there is a number "15" near the bottom of the page and a faint date of March 17, 2023, in the space for date of the staff signature.   *See* Charles Mot. Ex. A, ECF No. 39-2, at 5–6.   This differs from the inmate request form attached to Plaintiff's Complaint, ECF No. 1 at 19, and the copy included in Charles's Exhibit B, *see* Charles Mot. Ex. B, ECF No. 39-3, at 3–4, which both show the notation, "date added for Grievance Process" and the date of March 17, 2023.   Regardless of the source of these variations, all available copies of the inmate request form dated May 11, 2021 reveal a date of March 17, 2023, which is the same date Plaintiff submitted his untimely Level 2 appeal for HSAR #38.   *See* Charles Mot. Ex. A, ECF No. 39-2, at 12.   Accordingly, as further discussed below, the Court cannot conclude that this evidence demonstrates a genuine issue of material fact as to whether the inmate request form dated May 11, 2021 was ever received or reviewed by Defendant Santavenere (or anyone) in a timely fashion.

**DISCUSSION**

Defendants argue that Plaintiff has not exhausted his administrative remedies in compliance with the Prison Litigation Reform Act ("PLRA") and cannot prevail as a matter of law on his claims of Eighth Amendment violation.   Charles's Mot. for Summ. J., ECF No. 39; Santavenere's Mot. for Summ. J., ECF No. 55-1.

**PLRA**

The Prison Litigation Reform Act requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case.   *See* 42 U.S.C. § 1997e(a)

(providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly" (quotation omitted)). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a

grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002); *see also Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) (inmate failed to exhaust administrative remedies because he commenced action in district court before appeal was decided or response period elapsed).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

at 644.   The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive."   *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).   In considering the issue of availability, however, the court is guided by these illustrations.   *See Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden of proving that the plaintiff did not exhaust his administrative remedies.   *See Jones*, 549 U.S. at 216; *Burton v. Salerno*, No. 3:20-CV-1926, 2023 WL 184238, at *6 (D. Conn. Jan. 13, 2023); *Sease v. Phillips*, No. 06-CV-3663, 2008 WL 2901966, at *4 (S.D.N.Y. July 24, 2008).   Once this burden is met, the plaintiff must show that he did exhaust his administrative remedies or that the administrative remedy is not available in practice.   *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (citing *Murray v. Palmer*, No. 03-CV-1010, 2010 WL 1235591, at *4 (N.D.N.Y. Mar. 31, 2010)).

<u>APRN Charles</u>

Plaintiff alleges that APRN Charles examined him after he advised her that he feared he had suffered from a stroke and experienced "symptoms corroborating this fear."   Compl., ECF No. 1, ¶ 5.   Plaintiff claims that Charles deemed his having suffered a stroke to be unlikely after her mNIHSS screening and failed to arrange for further measures to rule out a stroke, such as ordering an MRI or consulting with a neurologist.   *Id.* at 9–11.   He claims that her "antagonistic feelings" towards him were "objectively evident in the medical record."   *Id.* at 12.   He asserts that she referred him to UConn Hospital where he saw a neurologist six days after he experienced his stroke symptoms and that he has been diagnosed with a "debilitating pons stroke—resulting in a handicap of poor prognosis."   *Id.* at 4–5 (¶¶ 1, 9).

The Court agrees that Plaintiff failed to exhaust his administrative remedies for his complaint concerning the diagnosis and treatment provided by APRN Charles.   Under the PLRA, Plaintiff was as required to utilize all the steps required by the administrative review process and to do so properly.   *See Jones*, 549 U.S. at 218.

Plaintiff does not dispute that his Level 1 HSAR and Level 2 Appeal #536 requesting "reasonable arrival" at Admitting and Processing prior to transportation had no relevance to Charles's involvement with his medical care.   *See* Pl.'s L.R. Stmt. to Charles's Mot., ECF No. 46, at 25–26 (¶¶ 27–28); Bradley HSARs, ECF No. 55-8, at 11–13.

Plaintiff asserts that his HSAR #31178 raised the issue of Charles's "improper care" for his stroke, although it did not actually name Charles in its statement of the problem and requested resolution.   Pl.'s L.R. Stmt. to Charles's Mot., ECF No. 46, at 26 (¶ 29).   To be sure, the PLRA does not imposes a requirement for a plaintiff to name all defendants.   *Jones,* 549 U.S. at 217.   A grievance must, however, alert prison officials to a problem, and the "level of detail necessary in a grievance" is defined by the prison directives.   *Id.* at 217, 219; *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) ("[I]nmates must provide enough information [in a prison grievance] about the conduct of which they complain to allow prison officials to take appropriate responsive measures.").

Directive 8.9(6)(c)(i)(1) clearly required Plaintiff to submit an HSAR form CN 8901 with the box for Diagnosis and Treatment checked.   Further, Directive 8.9(6)(c)(i)(1) required him to "concisely explain the specific diagnosis or treatment decision," "specify the date of diagnosis or treatment," explain how he was "dissatisfied with the diagnosis and treatment, how he . . . has been affected, and concisely state the resolution desired."   A.D. 8.9(6)(c)(i)(1).

It is undisputed that Plaintiff did not check Diagnosis and Treatment box for any of his HSARs.  For his rejected Level 1 HSAR #31178, Plaintiff requested "mainly discovery," *see* Bradley HSARs, ECF No. 55-8, at 5, and his "Grievance Rewrite," or HSAR #38, clarified only that his "[r]equested action" was "a medical narr[a]tive concerning the sequence of events following the 5/7/21 stroke to augment discovery."  *See id.* at 9.

Plaintiff stated that his "[g]rievance is placed mainly for a timely preservation of rights." *Id.*  But his HSAR failed to alert HSAR Coordinator Cruz that she needed to "consult with the provider" relevant to his stroke symptoms as required for a diagnosis and treatment review under Directive 8.9(6)(c)(i)(2)(a).  Instead, Cruz treated his HSAR as seeking a resolution for an administrative issue and issued a response to address his request for his medical records.  *See id.* at 10.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits).

*Woodford*, 548 U.S. at 90 (quotation omitted).  The undisputed record clearly shows Plaintiff never requested review of APRN Charles's diagnosis and treatment under the steps set forth by Directive 8.9(6)(c)(i), and therefore, he failed to exhaust his administrative remedies in compliance with the PLRA for his claims challenging Charles's diagnosis and treatment for his stroke symptoms, including his claim that her conduct delayed his medical diagnosis or treatment for his stroke symptoms.

Finally, the record fails to raise any suggestion that Plaintiff's remedies were not available as contemplated by *Ross*.  The exhaustion requirement under the PLRA is strict and can be

excused only under the PLRA's "own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. Plaintiff maintains that there was no administrative process available that could offer him relief for the actual harm caused by delay in his transport to UConn Hospital. Pl.'s L.R. Stmt. to Charles's Mot., ECF No. 46, at 38 (¶ 5); Pl.'s Response, ECF No. 64, at 2. In *Scott v. Greene*, the Second Circuit rejected a plaintiff's similar claim for excusal on grounds that the administrative process would not remedy her medical condition. 2023 WL 2563896, at *1 (2d Cir. Mar. 20, 2023) (summary order). As the Second Circuit noted, unavailability of remedies is the "one exception" to exhaustion. *Id.* (citing *Ross*, 578 U.S. at 642). And "the type of relief offered is not relevant to the availability inquiry." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Thus, Plaintiff was required to exhaust his available administrative remedies "regardless of the relief offered through administrative procedures." *Booth*, 532 U.S. at 741.

Here, Plaintiff has not adduced evidence to support an inference that any of his administrative remedies were unavailable for purposes of the PLRA as set forth by *Ross*, 578 U.S. at 643–44. The record shows that Plaintiff was aware of the grievance process under Directive 8.9 and was able to file HSARs but did not pursue a review of Charles's diagnosis and treatment under Directive 8.9(6)(c)(i). *See Scott*, 2023 WL 2563896, at *1 (holding that grievance process was not unavailable to plaintiff after taking into account fact that plaintiff had "used [her facility's] grievance procedure several times during the relevant period for issues not related to this case"); *Otero v. Purdy*, No. 3:19-CV-1688, 2021 WL 4263363, at *10 (D. Conn. Sept. 20, 2021) (noting plaintiff's prior grievance filing demonstrated availability of administrative remedies). Nor is there any suggestion in the record that Plaintiff's grievance process was a "simple dead end" because officers were "unable or consistently unwilling" to provide him relief or that prison

administrators thwarted his ability to take advantage of his remedies through "machination, misrepresentation, or intimidation." *See Ross*, 578 U.S. at 643–44.

Accordingly, Plaintiff has not raised a question of fact about whether his administrative remedies were unavailable to him.   Instead, the record shows Plaintiff's administrative remedies were available but he failed to effect proper exhaustion of his misdiagnosis and treatment claims against APRN Charles by "using all steps" in Directive 8.9 and "doing so properly." *See Woodford*, 548 U.S. at 90.

Defendant Charles's motion for summary judgment is granted on the claims against her on nonexhaustion grounds.[11]

Nurse Supervisor Santavenere

In his allegations, Plaintiff complains about Nurse Supervisor Santavenere's failure to provide responsive action after his verbal and written requests to provide him with further review of his stroke symptoms, including consultation with a neurologist or a second opinion.   Compl., ECF No. 1, at 5 (¶¶ 6–7), 13.   He claims that Santavenere "instead agreed to intercede by speaking to Provider Sandra Charles." *Id.* at 5 (¶ 5).

Consistent with the prior discussion, Plaintiff's HSARs failed to exhaust his administrative remedies for his complaint about Santavenere's indifference to his requests for further medical review for his stroke symptoms.   No information in the HSARs afforded notice that he sought anything more than medical records or assistance with his transportation issues. *See Johnson*, 380 F.3d at 697.

---

[11]  Because the Court has determined that Plaintiff failed to comply with the PLRA's exhaustion requirement before filing this action in federal court, the Court need not address the merits of Plaintiff's claims. *See, e.g.*, *Vidro v. Erfe*, No. 18-CV-567, 2019 WL 4738896, at *9 (D. Conn. Sept. 26, 2019) (the merits of the plaintiff's claim were "not reached" because the court had already granted summary judgment for the defendants on the basis of the plaintiff's failure to exhaust the administrative remedies available to him).

Although his rejected HSAR #31178 and "Grievance Rewrite" HSAR #38 refer to his inmate request form dated May 11, 2021, there is no information in the actual grievance alerting the HSAR coordinator that she needed to provide responsive action for Santavenere's asserted failure to provide Plaintiff with further medical review of his stroke symptoms.[12]  And as discussed above, the evidence regarding the inmate request form does not create a genuine issue of material fact on this issue.  Thus, Defendant Santavenere has sustained his burden to demonstrate Plaintiff did not exhaust his administrative remedies under Directive 8.9 for his Eighth Amendment medical indifference claims against Santavenere, prior to filing this action in federal court.  *See Woodford*, 548 U.S. at 90.  As no evidence in the record supports an inference that Plaintiff's remedies under Administrative Directive 8.9 were not available, the Court grants Defendant Santavenere's motion for summary judgment.

In addition, the Court concludes that Plaintiff cannot prevail on the merits of his Eighth Amendment claims against Defendant Santavenere.  To make out a claim of deliberate indifference to a serious medical need, a plaintiff must satisfy both objective and subjective elements.  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  First, the alleged deprivation "must be, in objective terms, 'sufficiently serious.'"  *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "Second, the charged official must act with a sufficiently culpable state of mind."  *Id.* (citing *Wilson*, 501 U.S. at 298).

Under the objective prong, the inmate's medical need or condition must be "a serious one."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  To satisfy the second subjective prong, a

---

[12] Nor can his Level 2 Appeal for HSAR #38 satisfy his exhaustion requirement, even if he attached the inmate request dated May 11, 2021, which is disputed.   This Level 2 Appeal was rejected without review as untimely, and proper exhaustion required Plaintiff to comply with all procedural rules for filing an administrative remedy request, including complying with filing deadlines.   "'[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements.'"   *Pena v. Semple*, No. 3:19-CV-124, 2021 WL 311278, at *9 (D. Conn. Jan. 29, 2021) (quoting *Ruggerio v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006)).

prison official or medical staff member must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (internal quotation marks and citation omitted). Further, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *see also Hathaway*, 37 F.3d at 70 ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors.").

Even assuming, without deciding, that Plaintiff has satisfied the objective element of the Eighth Amendment analysis—*i.e.*, that his medical condition or need was sufficiently serious—no reasonable juror could conclude based on the present record that Nurse Supervisor Santavenere acted with the requisite culpable state of mind. *See Salahuddin*, 467 F.3d at 281 ("Even if objectively unreasonable, a defendant's mental state may be nonculpable."). Defendant Santavenere declares that he was not authorized to issue orders for patient care; did not have authority to supersede medical decisions orders, or determinations of a doctor or an APRN; and could not order or dictate to doctors what medical care should be provided for any inmate. Santavenere Decl., ECF No. 55-9, ¶¶ 9–11. No evidence suggests that Santavenere had the authority, but nonetheless failed, to provide Plaintiff with any further medical review or treatment for his stroke symptoms, such as through a consultation with a neurologist or a second opinion.

Accordingly, no reasonable jury could determine based on review of the evidence that Santavenere acted (or failed to act) with a conscious disregard of Plaintiff's serious medical needs. *See Davis v. Supervisor*, No. 3:21-CV-648, 2022 WL 3681558, at *6 (D. Conn. Aug. 25, 2022) (granting motion for summary judgment where record failed to show defendant could have provided him with more timely treatment or provision of his medication); *Warwick v. Doe*, No. 3:20-CV-227, 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (noting that allegations that did not indicate a defendant had, but failed to exercise, the power to provide more timely medical treatment did not satisfy the subjective prong of a deliberate indifference analysis). The Court grants Defendant Santavenere's motion for summary judgment.

**Conclusion**

For the foregoing reasons, Defendant Charles's motion for summary judgment (ECF No. 39) is GRANTED; Defendant Santavenere's motion for summary judgment (ECF No. 55) is GRANTED. Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 are dismissed with prejudice. The Clerk of the Court is instructed to enter judgment dismissing the Complaint and to close this case. *See Matteo v. County of Nassau*, No. 15-CV-6880, 2023 WL 5310587, at *19 (E.D.N.Y. Aug. 1, 2023) (granting summary judgment on, *inter alia*, exhaustion grounds, and dismissing plaintiff's federal claims with prejudice), *report and recommendation adopted*, 2023 WL 5310874 (Aug. 17, 2023).

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of December, 2024.

  */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE